UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MEYVI CONCEPCION RIVAS ORANTES,

Plaintiff,

v.

D & J EXPORT INC, DANNY SALMERON,
and ALEX SALMERON,

Defendants.

---

**MEMORANDUM AND ORDER**

24-cv-08423-LDH-RML

LaSHANN DeARCY HALL, United States District Judge:

Meyvi Concepcion Rivas Orantes ("Plaintiff") brings the instant action against D & J Export Inc. ("D & J Export"), Danny Salmeron, and Alex Salmeron (together, "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"); the New York State Human Rights Law (the "NYSHRL"); and the New York City Human Rights Law (the "NYCHRL"). Specifically, Plaintiff asserts claims for sex discrimination in the form of sexual harassment, as well as retaliation. Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint in its entirety.

## BACKGROUND[1]

In or around January 2018, Plaintiff began working as a clothing recycler at D & J Export, a corporation owned and operated by Defendants Danny and Alex Salmeron.[2] (Compl. ¶¶ 12, 18, ECF No. 1.) Thereafter, a rumor circulated in the workplace purporting that Plaintiff

---

[1] The following facts are taken from the Complaint and are assumed to be true for the purpose of deciding the instant motion.

[2] In the Complaint, Plaintiff alleges that in or around January 2018, she commenced working at D & J Export. (Compl. ¶ 18, ECF No. 1.) Elsewhere in the Complaint, however, Plaintiff alleges that she became employed at D & J Export in or around February 2019. (*Id.* ¶ 21.) For the purposes of this memorandum and order, the Court accepts the former allegation as true.

was engaged in a romantic relationship with a co-worker. (*Id.* ¶ 23.) Plaintiff alleges that, due to this rumor, Defendants Danny and Alex Salmeron "taunted and harassed" her. (*Id.*) According to the Complaint, Defendant Alex Salmeron was "verbally abusive" and "harsh" on Plaintiff. (*Id.* ¶ 29.) In one instance, when speaking to Plaintiff and three other women, Defendant Alex Salmeron stated, "Am I yelling at your butts? We will throw you out." (*Id.*)

Moreover, Plaintiff alleges that Defendant Danny Salmeron offered her money for sexual favors and suggested that Plaintiff "meet him in private." (*Id.* ¶ 24.) Defendant Danny Salmeron consistently offered Plaintiff a ride home and informed her that "she should not be afraid" that anyone would "see them" because the windows of his car were tinted. (*Id.* ¶¶ 25, 27.) Plaintiff did not accept any of Defendant Danny Salmeron's offers for a ride home. (*Id.* ¶ 26.) In one instance, after Plaintiff declined Defendant Danny Salmeron's offer for a ride home, Defendant Danny Salmeron stated that "nothing would happen the first time[,] but it would happen the second time." (*Id.* ¶ 27.) Plaintiff interpreted Defendant Danny Salmeron as insinuating that he wanted to have sexual relations with her. (*Id.*) In or around March 2023, as Plaintiff departed work, Defendant Danny Salmeron "demanded" Plaintiff give him her phone number. (*Id.* ¶ 28.) Plaintiff declined. (*Id.*) Defendant Danny Salmeron then stated, "What's the fear? I have a small penis." (*Id.*)

Thereafter, in or around December 2023, when Plaintiff was arriving to work, Defendant Danny Salmeron requested that she go outside with him and displayed "three fingers." (*Id.* ¶ 30.) Plaintiff alleges that "three fingers" indicated Defendant Danny Salmeron's desire to pay her money for "sexual favors." (*Id.*) Plaintiff declined Defendant Danny Salmeron's request. (*Id.*) Also in December 2023, Defendant Danny Salmeron told Plaintiff that he would give her "whatever she wanted just to have sexual relations." (*Id.* ¶ 32.) Further, Defendant Danny

2

Salmeron asked Plaintiff to "[g]ive it to [him] as a Christmas gift." (*Id.*) Plaintiff understood Defendant Danny Salmeron as again seeking "sexual favors." (*Id.*) She responded, "No." (*Id.*) Defendant Danny Salmeron responded by again referring to his penis, stating, "Don't be afraid[.] I have small penis." (*Id.*) Plaintiff, again, rejected Defendant Danny Salmeron. (*Id.*) On December 23, 2023, at Defendant D& J Export's Christmas party, Defendant Alex Salmeron informed Plaintiff that she could collect her check from the office. (*Id.* ¶ 33.) Upon entering the office, Plaintiff encountered Defendant Danny Salmeron, who was intoxicated and in possession of her check. (*Id.*) Defendant Danny Salmeron insisted that Plaintiff give him a kiss. (*Id.*) Plaintiff refused and took her check from Danny Salmeron and left the office. (*Id.*) On December 28, 2023, Defendant Danny Salmeron arrived at work and came to the area where Plaintiff and five other women worked. (*Id.* ¶ 34.) According to the Complaint, Defendant Danny Salmeron was "angry and unstable" and "threatened and intimidated" the workers in the area. (*Id.*) On the same day, Defendant Danny Salmeron terminated Plaintiff's employment at D & J Exports. (*Id.* ¶ 35.)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court deciding whether to grant a motion to dismiss must "draw all reasonable inferences in [the plaintiff's] favor, assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (internal citation omitted). "[T]he tenet that a court must accept

3

a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Further, a court is not obligated to accept a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

## DISCUSSION

### I.    Sex Discrimination

#### A.  Title VII and the NYSHRL

Under Title VII, employers are prohibited from, "discriminat[ing] against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . . " *Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 50 (2d Cir. 2021) (summary order) (quoting 42 U.S.C. § 2000e–2(a)(1)).  The phrase "terms, conditions, and privileges of employment" encompasses, and renders actionable, sexual harassment resulting in a "discriminatorily hostile or abusive [work] environment,"[3] *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (internal quotation marks omitted), *as amended* (Apr. 20, 2001), as well as "tangible employment action[s] result[ing] from a [plaintiff's] refusal to submit to a[n employer's] sexual demands," *Rivera v. New York City Dep't of Correction*, 951 F. Supp. 2d 391, 399-400 (E.D.N.Y. 2013) (quoting *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 603 (2d Cir. 2006)).  Put differently, "Title VII prohibits two forms of sexual harassment in

---

[3] *See also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) ("One form of [sex] discrimination prohibited by Title VII is sexual harassment that results in a 'hostile or abusive work environment.'" (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986))).

the workplace:  (1) quid pro quo harassment; and (2) hostile environment harassment."[4]

*Sardinia v. Dellwood Foods, Inc.*, No. 94 CIV. 5458, 1995 WL 640502, at *2 (S.D.N.Y. Nov. 1, 1995) (first citing *Meritor*, 477 U.S. at 64-65; and then *Kotcher v. Rosa & Sullivan Appliance Center, Inc.*, 957 F.2d 59, 62 (2d Cir. 1992)).  Similarly, the NYSHRL provides that "[i]t shall be an unlawful discriminatory practice [f]or an employer," on account of an individual's sex, "to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law. § 296(1)(a).

Notably, a plaintiff may not assert a Title VII claim against an individual defendant.[5]  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII").  However, under the NYSHRL, an individual may be held liable for retaliation and discrimination claims "when an individual qualifies as an 'employer.'"  *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (quoting N.Y. Exec. Law § 296(1)).  "An individual qualifies as an 'employer' when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others."  *Id.* (citation omitted).

Moreover, "[c]laims brought pursuant to Title VII are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)."  *Bockus*, 850 F. App'x at 50.  Specifically, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff [(1)] is a member of a protected

---

[4] Here, the Complaint is grounded on allegations of sexual harassment.  (Compl.)  However, it is unclear to the Court whether, with respect to Plaintiff's discrimination claims, Plaintiff seeks to advance a hostile-work-environment theory or quid-pro-quo-harassment theory.  The Court addresses each in turn, accordingly.

[5] At the outset, because a plaintiff may not assert a Title VII claim against an individual defendant, the Court dismisses Plaintiff's discrimination and retaliation claims against Defendants Danny and Alex Salmeron, brought pursuant to Title VII.

class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent. *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).  Importantly, at the motion to dismiss stage, a plaintiff need not allege facts that satisfy every element of a Title VII claim.  Indeed, "at the initial [pleading] stage of the litigation in a Title VII case, [a] plaintiff does not need substantial evidence of discriminatory intent." *Id.* (internal quotation marks omitted) (quoting *Littlejohn*, 795 F.3d at 311).  Rather, a plaintiff "need only give plausible support to a minimum inference of discriminatory motivation." *Id.* (internal quotation marks omitted) (quoting *Littlejohn*, 795 F.3d at 312); *Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015)).  That is, a plaintiff need only plead facts plausibly alleging that the employer took an adverse action against her, at least, in part, for a discriminatory reason. *See Bockus*, 850 F. App'x at 50; *Carris,* 682 F. App'x at 32.  A plaintiff must, nevertheless, allege sufficient facts to "nudge[] [her] claims across the line from conceivable to plausible," *Vega*, 801 F.3d at 87 (first alteration in original) (quoting *Twombly*, 550 U.S. at 570) (citing *Iqbal*, 556 U.S. at 678–80), even under this "minimal burden," *Littlejohn*, 795 F.3d at 311.

### 1.  Hostile Work Environment

Under Title VII and the NYSHRL, claims for discrimination arising from a hostile work environment are analyzed under the same standard. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013) ("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard." (citing *Schiano,* 445 F.3d at 609)).  To establish a hostile-work-environment claim, a plaintiff must allege that "the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The standard for determining the existence of a hostile work environment has both "objective and subjective components." *Id.* at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)); *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive—both subjectively and objectively . . . . " (internal quotation marks omitted) (citations omitted)).  Put differently, "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321.  Of relevance here, "[t]he kinds of workplace conduct that may be actionable under Title VII include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Redd*, 678 F.3d at 175 (cleaned up) (quoting *Meritor*, 477 U.S. at 65).

Moreover, "as a general rule, [the conduct] must be more than episodic; [it] must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997) (internal quotation marks omitted) (citation omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation omitted).  It is, however, "well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.* (citation omitted).  When assessing the sufficiency of allegations, a court must "consider the totality of the circumstances, including [(1)] 'the frequency of the discriminatory conduct; [(2)] its severity; [(3)] whether it is physically

threatening or humiliating, or a mere offensive utterance; and [(4)] whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 510 U.S. at 23).

Critically, for a plaintiff to prevail on any sexual harassment claim, including a hostile-work-environment claim, she must also demonstrate "a causal connection between [her sex] . . . and the resultant preference or disparity." *DeCintio v. Westchester Cnty. Med. Ctr.*, 807 F.2d 304, 307 (2d Cir. 1986) (citation omitted). That is, to prevail on a hostile-work-environment claim, "it is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano*, 294 F.3d at 374 (citation omitted); *see DeCintio*, 807 F.2d at 307.

Finally, beyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer. *Id.* at 373. Where, as here, the alleged harasser owns the business, the objectionable conduct is "automatically imputed to the employer." *Phanco v. R.J.M. Rest., Inc.*, No. 07-CV-687, 2010 WL 1418088, at *5 (W.D.N.Y. Apr. 6, 2010) (first citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); and then citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

Defendants argue that, because Plaintiff fails to plausibly allege that any discriminatory conduct was attributable to her sex, Plaintiff's hostile-work-environment claim should be dismissed. (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") at 7-8, ECF No. 18-3.)[6] The Court disagrees.

---

[6] Defendants filed separate but identical memoranda of law in support of their motion to dismiss as ECF Nos. 16-4, 18-3, and 19-1. For the purposes of this memorandum and order, the Court refers to the memorandum of law in support of Defendants' motion to dismiss filed as ECF No. 18-3.

Here, Defendant Danny Salmeron is alleged to have made uninvited sexual solicitations and advances toward Plaintiff on multiple occasions. Specifically, Defendant Danny Salmeron's conduct included, *inter alia*: requesting that Plaintiff provide him with sexual favors "as a Christmas gift" and informing Plaintiff that he would give her "whatever she wanted just to have sexual relations," (Compl. ¶ 32); attempting to kiss Plaintiff in another instance, (*id.* ¶ 33); consistently offering Plaintiff rides home and stating that "[Plaintiff] should not be afraid" that anyone would "see them," given his tinted car windows, (*id.* ¶¶ 25, 27); and, following Plaintiff's rejections, assuring Plaintiff, on separate occasions, that she should not be "afraid" or have "fear" given his "small penis," (*id.* ¶¶ 28, 32). In essence, Plaintiff complains of a prolonged campaign of unwelcome sexual solicitations and advances by Defendant Danny Salmeron over the course of her employment at Defendant D & J Export. On these facts the Court can easily infer that Defendant Danny Salmeron's actions were motivated by Plaintiff's sex. *See Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 388 (E.D.N.Y. 2018) (collecting cases) (finding that, where Defendant sent the plaintiff naked images of himself and made several overtures seeking intercourse with the plaintiff, the plaintiff stated a claim for "[sex] hostility"—that is, a hostile work environment based on the plaintiff's sex). "Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex." *Meritor*, 477 U.S. at 64 (internal quotation marks omitted) (alteration accepted); *see also DeCintio*, 807 F.2d at 307. Defendant Danny Salmeron, thus, discriminated against Plaintiff on the basis of her sex. And, because Defendant Danny Salmeron is an owner of D & J Export, (Compl. ¶ 12), this discriminatory conduct is automatically imputed to Defendant D & J Export. *Phanco*, No. 07-CV-687, 2010 WL 1418088, at *5 ("When, as in this case, the alleged harasser is the owner of the business or is in a

supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." (citation omitted)).

In moving to dismiss the Complaint, Defendants fail to address the allegations of Defendant Danny Salmeron's requests for sexual favors and sexual advances toward Plaintiff. (*See* Defs.' Mem.)  Instead, Defendants' argument focuses on the allegations that Defendants Danny and Alex Salmeron used "threatening or humiliating language" with all employees. (Defs.' Mem. at 8.)  As Defendants' argument goes, because Plaintiff alleges that Defendants Danny and Alex Salmeron used "threatening or humiliating language" with all employees and "frequently humiliated [all] employees," Plaintiff fails to establish that she was discriminated against based on her sex.  (*Id.*)  That is, Defendants argue that, because all employees endured discriminatory treatment, Plaintiff was not discriminated against on the basis of her sex. However, as the Second Circuit has made plain, in Title VII discrimination claims, a court must "[take] individuals as the unit of analysis." *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 123 n.23 (2d Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020).  Put differently, "the question is not whether discrimination is borne only by men or only by women or even by both men and women; instead, the question is whether an individual is discriminated against because of . . . her sex." *Id.*  As discussed, *supra*, Plaintiff was discriminated on the basis of her sex.  Defendants' argument is, therefore, unavailing.

Accordingly, to the extent that Plaintiff alleges a hostile-work-environment claim, Defendants' motion to dismiss Plaintiff's hostile-work-environment claim, brought pursuant to Title VII, is denied as to Defendant D & J Export.  And, Defendants' motion to dismiss Plaintiff's hostile-work-environment claim, brought pursuant to the NYSHRL, is denied as to Defendants D & J Export and Danny Salmeron.

That said, it is plain to the Court that, with respect to Defendant Alex Salmeron, Plaintiff fails to sufficiently allege a hostile-work-environment claim under the NYSHRL.  Here, Plaintiff alleges that, when speaking to Plaintiff and three other women, Defendant Alex Salmeron stated, "Am I yelling at your butts? We will throw you out." (Compl. ¶ 29.)  Beyond this allegation, however, Plaintiff fails to allege any additional facts as to Defendant Alex Salmeron.[7]  Plainly, as alleged, Plaintiff identifies only a single "offensive utterance" made by Defendant Alex Salmeron.  *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 510 U.S. at 23).  As the Second Circuit has made clear, "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment [under Title VII and the NYSHRL]."  *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004); *see also Fitzgerald v. Henderson*, 251 F.3d 345, 356-57 (2d Cir. 2001) ("Title VII [and the NYSHRL] do[] not authorize a hostile work environment claim for conduct that was merely offensive . . . . ").  Nor does Plaintiff's naked allegations that Defendant Alex Salmeron "created a hostile work environment," (Compl. ¶ 22), "taunted and harassed" her, (*id.* ¶ 23), and "verbally abus[ed] . . . and was . . .  harsh" on Plaintiff, (*id.* ¶ 29), alter the Court's conclusion.  Indeed, "without supporting factual allegations, . . . 'naked assertions' . . . are insufficient to state a Title VII claim . . . for a hostile work environment . . . . "  *Greene v. Northwell Health Inc.*, No. 2:23-CV-4846,

---

[7] In her opposition, Plaintiff includes a litany of allegations as to Defendant Alex Salmeron, which were not alleged in the Complaint, including that Defendant Alex Salmeron: "accus[ed] Plaintiff of laziness"; "ma[d]e public comments, such as, 'They sent the lick to work with me,'"; and called Plaintiff "very slow." (Pl.'s Mem. L. Opp'n Defs.' Mot. Dismiss ("Pl.'s Mem.") at 12, ECF No. 18-4.)  However, "a party may not assert new facts or legal theories for the first time in opposition papers, as a party may not use motion papers to amend the allegations in [a] complaint." *United States v. Westchester Fire Ins. Co.*, No. 22 CV 15, 2025 WL 2916630, at *6 (S.D.N.Y. Oct. 10, 2025) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *see also Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (summary order) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.").  As such, the Court disregards these new allegations. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021) ("A district court . . . 'errs when it consider[s] . . . or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.'" (quoting *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000))).

11

2024 WL 4287875, at *18 (E.D.N.Y. Sept. 25, 2024) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, Plaintiff's hostile-work-environment claim, brought pursuant to the NYSHRL, is dismissed with respect to Defendant Alex Salmeron.

### 2. *Quid Pro Quo Sexual Harassment*

"[Q]uid pro quo harassment occurs when submission to or rejection of unwelcome sexual conduct by an individual is used as a basis for employment decisions affecting such individual." *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994) (emphasis in original) (internal quotation marks omitted) (citation omitted); *see also Carrero v. N.Y.C. Hous. Auth.*, 890 F.2d 569, 579 (2d Cir. 1989) ("[T]he gravamen of a *quid pro quo* claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual [advances] and that adverse consequences follow from the employee's refusal.") To state a claim for quid pro quo harassment under Title VII and the NYSHRL, a plaintiff must allege "that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Bass v. World Wrestling Fed'n Ent., Inc.*, 129 F. Supp. 2d 491, 500 (E.D.N.Y. 2001) (quoting *Karibian*, 14 F.3d at 777). That is, a plaintiff must allege a causal connection between a tangible employment action and her refusal to submit to an employer's sexual demands. *Crandell v. New York Coll. of Osteopathic Med.*, 87 F. Supp. 2d 304, 318 (S.D.N.Y. 2000) (finding that, to state quid pro quo harassment claim, a plaintiff must allege that "a tangible employment action resulted from [her] refusal to submit to a[n employer's] sexual demands" (quoting *Burlington*, 524 U.S. 742, 753, (1998)); *Cook v. New York City Dep't of Educ.*, 90 F. App'x 562 (2d Cir. 2004) (summary order) (same); *Bass*, 129 F. Supp. 2d at 500 (same). "A tangible employment action usually constitutes a significant change in employment status, such as hiring, firing,

12

failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Schiano*, 445 F.3d at 604 (internal quotation marks omitted) (citation omitted).

Defendants argue that Plaintiff fails to allege causality—that is, that a tangible employment action resulted from of her rejection of Defendant Danny Salmeron's sexual advances—and therefore, Plaintiff's quid pro quo harassment claim should be dismissed. ("Defs.' Mem. at 6.)  The Court agrees.

Here, Defendant Danny Salmeron engaged in unwanted sexual conduct toward Plaintiff, all of which she rejected.  (Compl. ¶¶ 24-28, 30, 32-33.)  Additionally, on December 28, 2023, five days after rejecting Defendant Danny Salmeron's final sexual advance, Defendant Dany Salmeron "threatened and intimidated" a group of women, of which Plaintiff was a member, and, later that day, terminated Plaintiff's employment at Defendant D & J Export.[8]  (Compl. ¶¶ 33-35.)  Plaintiff contends that, by alleging that Defendant Danny Salmeron made sexual advances, which she rejected, she has demonstrated that she was subjected to unwelcome sexual conduct and that her refusals "became the basis for tangible employment decisions—including, ultimately, her termination."[9]  (Pl.'s Mem. L. Opp'n Defs.' Mot. Dismiss ("Pl.'s Mem.") at 14,

---

[8] In her opposition, Plaintiff alleges further that, prior to her termination, "[s]he was assigned longer hours, given more difficult tasks, and subjected to increase scrutiny and humiliation."  (Pl.'s Mem. at 15.)  However, as discussed, *supra*, a party cannot amend her complaint through allegations newly asserted in her opposition.  *See Westchester Fire Ins. Co.*, No. 22 CV 15, 2025 WL 2916630, at *6; *Shah*, 252 F. App'x at 366.  The Court disregards these allegations, accordingly.

[9] In addition, Plaintiff argues that she alleges facts demonstrating that Defendant Danny Salmeron "linked tangible job benefits," namely her continued employment at D & J Export, to his sexual advances.  (Pl.'s Mem. at 14.)  And, as Plaintiff's argument goes, as a result, she has pleaded a claim for quid pro quo harassment.  (*Id.*)  This is but a different side of Plaintiff's other quid pro quo argument.  In any event, this argument is unavailing.  The complaint does not include a single allegation that Defendant Danny Salmeron "[held] out [D & J Export's] benefits as an inducement to [Plaintiff] for sexual favors."  *Hernandez v. Premium Merch. Funding One, LLC*, No. 19CV1727, 2020 WL 3962108, at *13 (S.D.N.Y. July 13, 2020) (quoting *Carrero v. New York City Hous. Auth.*, 890 F.2d 569 (2d Cir. 1989)) (citing *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir. 1994)).  Stated differently, while Defendant Danny Salmeron sought sexual favors, Plaintiff fails to allege that his demands were conditioned on any benefit from D & J Export, including Plaintiff's continued employment.  Indeed, the complaint contains not a single

ECF No. 18-4.)  Not necessarily.  While these allegations plainly demonstrate unwelcome sexual conduct, they fail to reflect that a tangible employment action occurred on the basis of Plaintiff's refusal of Defendant Danny Salmeron's sexual overtures.

It is true that "[a] 'close temporal proximity' between [the rejection of sexual advances and the adverse employment action] 'constitutes evidence of a causal connection.'"  *Harriram v. Fera*, No. 21-CV-3696, 2024 WL 1020266, at *5 (S.D.N.Y. Mar. 8, 2024) (quoting *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 90 (2d Cir. 2011)).  Further, while the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman–Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554 (2d Cir.2001), courts have found that, as here, a gap of less than two months between an unwanted sexual advance and a tangible employment action can support an inference of causation based on temporal proximity.  *See, e.g.*, *Messer v. Fahnestock & Co. Inc.*, No. 103CV-04989, 2008 WL 4934608, at *15 (E.D.N.Y. Nov. 18, 2008) (collecting cases). That said, the Second Circuit has, nonetheless, permitted courts to "exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (summary order) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).

In exercising its judgment, the Court finds that, despite the temporal proximity between her rejection of Defendant Danny Salmeron's final sexual advance and the tangible employment action, *i.e.*, her termination, Plaintiff fails to demonstrate causality.  That is, Plaintiff fails to allege a single fact evidencing a "link[]" between her termination and her rejection of Defendant Danny Salmeron's "sexual overtures." *Bass*, 129 F. Supp. 2d at 500 (quoting *Karibian*, 14 F.3d

---

allegation that, while making requests for sexual favors, Defendant Danny Salmeron made any mention of the status of Plaintiff's employment—indirectly or directly.

at 778).  Plaintiff, for example, does not allege that, following her final rejection of Defendant Danny Salmeron, Defendant Danny Salmeron "chastised" or "reprimanded" her, assigned her "unreasonably large quantities of work," or changed his "demeanor" toward Plaintiff—that is, the manner in which he interacted with Plaintiff—in any way.  *Gibson v. Jacob K. Javits Convention Ctr. of New York*, No. 95 CIV. 9728, 1998 WL 132796, at \*6 (S.D.N.Y. Mar. 23, 1998).  Indeed, Plaintiff does not allege any interaction between her, specifically, and Defendant Danny Salmeron between Plaintiff's final rejection of his sexual advances and her termination. (*See* Compl.)  Even more, as Defendants aptly note, Plaintiff concedes that, despite her refusal of Defendant Danny Salmeron's repeated sexual solicitations, she remained employed at Defendant D & J Export for nearly six years.  (*See id.* ¶ 19.)  This fact fundamentally contradicts Plaintiff's claims and, combined with the complete dearth of allegations supporting a quid pro quo harassment theory, makes plain that temporal proximity, alone, cannot "nudge [Plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Rather, the temporal proximity between Plaintiff's termination and her refusal of Defendant Danny Salmeron's final sexual solicitation is mere coincidence.  As such, to the extent that Plaintiff asserts claims for quid pro quo harassment, pursuant to Title VII and the NYSHRL, such claims fail and are dismissed, accordingly.

## II.   Retaliation

### A.  Title VII and the NYSHRL

Title VII provides that it is unlawful for an employer "to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter . . . . " 42 U.S.C. § 2000e-3(a).  Similarly, the NYSHRL makes it an unlawful discriminatory practice for an employer "to expel or otherwise discriminate against any person

because [she] has opposed any practices forbidden under this article . . . . " N.Y. Exec. Law § 296(1)(e). "[T]he standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citing *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 n.1 (2d Cir. 2000)). Such claims are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Summa*, 708 F.3d at 125 ("The burden-shifting framework laid out in *McDonnell Douglas* governs retaliation claims under both Title VII and the NYSHRL." (internal citations omitted) (citing *Schiano*, 445 F.3d at 609)). "At the pleading stage, 'the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.'" *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (citing *Littlejohn*, 795 F.3d at 316). For a retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege: "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

Moreover, similar to discrimination claims brought under the NYSHRL, an individual may be held liable for retaliation claims under the NYSHRL "when an individual qualifies as an 'employer.'" *Townsend*, 679 F.3d at 57 (quoting N.Y. Exec. Law § 296(1)). Again, "[a]n individual qualifies as an employer when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others." *Id.*

16

Defendants argue that Plaintiff fails to allege that she engaged in protected activity, and that Defendants were not aware that Plaintiff engaged in any protected activity. (Defs.' Mem. at 9-11.) The Court disagrees.

Here, Defendant Danny Salmeron made consistent sexual advances and sexual solicitations toward Plaintiff. (Compl. ¶¶ 24-25, 27-28, 30, 32-33.) In each instance, Plaintiff rejected Defendant Danny Salmeron's sexual conduct. (*Id.* ¶¶ 26-28, 30, 32-33.) Defendants contend that, in this Circuit, rejection of unwanted sexual advances is insufficient to constitute a protected activity. (Defs.' Mem. at 9.) Not so. A "protected activity" is an activity "taken to protest or oppose statutorily prohibited discrimination." *Wimes v. Health*, 157 F. App'x 327, 328 (2d Cir. 2005) (summary order) (quoting *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000), *superseded on other grounds by* N.Y.C. Local L. No. 85). To engage in a protected activity, a plaintiff need not file a formal complaint; paradigmatic examples of protected activities include "'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of coworkers who have filed formal charges.'" *Cruz,* 202 F.3d at 566 (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)). It is true that district courts in this Circuit diverge as to whether rejecting a harasser's sexual advances constitutes protected activity.[10] However, a number of courts in other circuits have concluded that refusal of a supervisor or employer's sexual advances constitutes protected activity for the purposes of retaliation claims.

---

[10] *Compare Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 448 (S.D.N.Y. 2018) ("[Defendant's] sexual advances qualified as an unlawful employment practice, and [plaintiff] engaged in protected activity each time she rejected them." (internal quotation marks omitted) (citations omitted)), with *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 189 (E.D.N.Y. 2012) ("[R]ejection of sexual advances does not constitute a protected activity."); *compare Burrell v. CUNY*, 894 F. Supp. 750, 761 (S.D.N.Y. 1995) (determining that "refus[al] to accede to . . . sexual advances" is an activity protected under Title VII), with *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 438–39 (S.D.N.Y. 1996) ("[E]ven the broadest interpretation of a retaliation claim cannot encompass instances where the alleged 'protected activity consists simply of declining a harasser's sexual advances.").

*See, e.g.*, *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 86 (E.D.N.Y. 2020) (finding that "a majority of courts confronted with th[e] issue [of whether an employee's rejection of an employer's sexual advances constitutes a protected activity" have reached the conclusion that refusing an employer's sexual advances constitutes protected activity for purposes of a retaliation claim); *Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 385-86 (S.D.N.Y. 2002) (same) (collecting cases). Finding no reason to depart from the view of the majority of courts, the Court adopts a similar view. *See Antoine*, 489 F. Supp. 3d at 86. As such, based on the allegations that Plaintiff rejected Defendant Danny Salmeron's sexual advances, it is plain that Plaintiff sufficiently alleged that she engaged in protected activity.

Moreover, at this pleading stage, Plaintiff alleges facts sufficient to establish that Defendants were aware of her protected activity, and that her employer took an adverse employment action against her. *See Summa*, 708 F.3d at 125. Here, the Complaint includes multiple allegations that Plaintiff rejected Defendant Danny Salmeron's sexual advances and solicitations by telling him directly, (*see* Compl. ¶¶ 26-28, 30, 32-33), thus making clear to Defendants that Plaintiff was engaging in protected activity. Further, Plaintiff was terminated as an employee by Defendants. As such, Plaintiff sufficiently alleges that she sustained an adverse employment action. *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 85 (2d Cir. 2001) (finding that an adverse employment action can be demonstrated by a termination of employment).

Notwithstanding the above, the Court finds that Plaintiff plainly fails to allege that "there was a causal connection between the protected activity and th[e] adverse action." *Summa*, 708 F.3d at 125. With respect to retaliation claims under Title VII and the NYSHRL, causation can be inferred through temporal proximity. *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)

18

(finding that a plaintiff can plead causation "*indirectly* by showing that the protected activity was followed closely by discriminatory treatment" (emphasis in original) (citation omitted)); *see also Riddle*, 640 F. App'x at 79.  In this Circuit, courts have generally found that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line" for inferring a causal relationship for a claim of retaliation.  *Martin v. State Univ. of New York*, 704 F. Supp. 2d 202, 230 (E.D.N.Y. 2010) (internal quotations omitted) (quoting *O'Neal v. State Univ. of New York,* 2006 WL 3246935, at *15 (E.D.N.Y. Nov. 8, 2006)); *see also Cunningham v. Consol. Edison Inc.*, No. CV-03-3522, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006).  Nevertheless, in "exercise[ing its] judgment about the permissible inferences that can be drawn from temporal proximity," *Riddle*, 640 F. App'x at 79 (quoting *Espinal*, 558 F.3d at 129), the Court concludes that, for the reasons discussed, *supra*, regarding Plaintiff's quid pro quo harassment claims, temporal proximity is insufficient to establish the causation required to sustain Plaintiff's retaliation claims.  Plaintiff's retaliation claims under Title VII and the NYSHRL, therefore, fail and are dismissed, accordingly.  *See, e.g.*, *Summa*, 708 F.3d at 125; *Febrianti v. Worldwide*, 2016 WL 502027, at *5 (S.D.N.Y. Feb 8, 2016) ("In the absence of any other evidence of retaliation, . . . the Court concludes that temporal proximity is not enough to 'nudge [Plaintiff's] claims across the line from conceivable to plausible.'" (alteration and emphasis in original) (quoting *Twombly*, 550 U.S. at 570)); *Hernandez*, No. 19CV1727, 2020 WL 3962108, at *14 n.9 (S.D.N.Y. July 13, 2020) (finding that, despite the three-week span between her protected activity and the adverse action, the plaintiff failed to plead causation through allegations of temporal proximity alone and, thus, the plaintiff's retaliation claims were ripe for dismissal).

19

### III.   The NYCHRL

#### A.  Sex Discrimination

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citations omitted).  Like its federal and state counterparts, the NYCHRL, provides that it is "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the . . . [sex] . . . of any person, to . . . discriminate against such person . . . in terms, conditions or privileges of employment."  *Id.* at 110 (quoting N.Y.C. Admin. Code § 8–107(1)(a)).  That is, discrimination claims brought pursuant to the NYCHRL require that a Plaintiff be subjected to negative differential treatment because of a protected characteristic.  *See id.* ("To establish a [sex] discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her [sex]." (internal quotation marks omitted) (citation omitted)).  Notably, the NYCHRL "does not distinguish *quid pro quo* claims from hostile work environment ones, focusing instead on unequal treatment based on [sex]."  *Davis v. Navada's Bar & Lounge, LLC*, No. 22 CV 4176, 2024 WL 1531092, at *8 (E.D.N.Y. Mar. 1, 2024) (internal quotation marks omitted) (quoting *Friederick v. Passfeed, Inc.*, No. 21 CV 2066, 2022 WL 992798, at *7 (S.D.N.Y. Mar. 31, 2022)).

The NYCHRL does differ, however, in that it requires claims to be construed more liberally than under its federal or state counterparts, and that its provisions be interpreted "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Mihalik*, 715 F.3d at 109 (citation omitted).  The standard for establishing discrimination claims under the NYCHRL are, thus, less demanding than those applicable under

federal and state law.  *See id.*  For example, unlike Title VII, the NYCHRL, does not require "a connection between the [alleged] discriminatory conduct and a materially adverse employment action."  *Id.* at 114.  Nor does the NYCHRL require "severe and pervasive conduct."  *Id.* Nonetheless, the plaintiff "still bears the burden of showing that the conduct is caused by a discriminatory motive . . . [and] that she has been treated less well at least in part *because of* her [sex]."  *Id.* (emphasis in original) (internal quotation marks and citation omitted).

Defendants argue that, "even under the broader NYCHRL standard," Plaintiff fails to allege differential treatment on the basis of sex, and as a result, Plaintiff's sex discrimination claim, brought pursuant to the NYCRL, should be dismissed.  (Defs.' Mem. at 8.)  With respect to Defendant Danny Salmeron and D & J Export, the Court disagrees.  But, with respect to Defendant Alex Salmeron, the Court agrees.

 As discussed, *supra*, Plaintiff has adequately pleaded a claim for hostile work environment as to Defendants Danny Salmeron and D & J Export under Title VII and the NYSHRL.  Because plaintiff has adequately stated a claim for hostile work environment as to Defendants Danny Salmeron and D & J Export, under the Title VII or the NYSHRL, she has sufficiently pleaded a claim for sex discrimination under the NYCHRL.[11]

However, despite the NYCHRL's more liberal standard, Plaintiff's claim of sex discrimination against Defendant Alex Salmeron is insufficient for the same reasons as her federal and state claims.  Here, with respect to Defendant Alex Salmeron, Plaintiff alleges only

---

[11] *See e.g.*, *Scott v. YSB Servs. Inc.*, No. 21-CV-7711 (VSB), 2024 WL 1330043, at *7 (S.D.N.Y. Mar. 28, 2024) ("Having adequately stated a claim under Title VII and NYSHRL, Plaintiff has met the threshold for pleading a claim for hostile work environment[—that is, a claim for sex discrimination—]under the NYCHRL."); *Antoine*, 489 F. Supp. 3d at 84-85 (same); *Setty v. Fitness*, No. 17CV06504, 2018 WL 8415414 (E.D.N.Y. Dec. 18, 2018), *report and recommendation adopted sub nom. Setty v. Synergy Fitness*, No. 17CV6504, 2019 WL 1292431 (E.D.N.Y. Mar. 21, 2019) ("[A]s noted above, Plaintiffs established that they were subjected to a hostile work environment under Title VII and NYSHRL standards; because those standards are higher than the ones governing claims brought under the NYCHRL, it follows necessarily that Plaintiffs' allegations establish sex discrimination under the NYCHRL.").

that Defendant Alex Salmeron yelled at her.  (*See* Compl. ¶ 29.)  While this allegation may indicate that Plaintiff was treated "less well," *see Mihalik*, 715 F.3d at 110, without more, it does not demonstrate that such treatment was motivated by her sex.  *See Kugel v. Queens Nassau Nursing Home Inc.*, 568 F. Supp. 3d 253, 265 (E.D.N.Y. 2021) (finding that the plaintiff's "scatter-shot allegations" that Defendant yelled at Plaintiff, while perhaps indicating that the plaintiff was treated "less well," did not demonstrate that such treatment was motivated by the plaintiff's sex).  As such, Plaintiff fails to state a claim for sex discrimination under the NYCHRL as to Defendant Alex Salmeron.  *See Mihalik*, 715 F.3d at 110; *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 452 (E.D.N.Y. 2013) (finding that the defendant yelling profanities at the plaintiff was insufficient to state a NYCHRL sex discrimination claim because the plaintiff failed to show that the defendant's conduct was due to her sex).

Accordingly, Defendants' motion to dismiss Plaintiff's sex discrimination claims, brought pursuant to the NYCHRL, is denied as to Defendants Danny Salmeron and D & J Export and granted as to Defendant Alex Salmeron.

### B.  Retaliation

"Section 8–107(7) of the NYCHRL prohibits employers from 'retaliat[ing] . . . in any manner against any person because such person has . . . opposed any practice forbidden under this chapter.'"  *Mihalik*, 715 F.3d 102 (quoting N.Y.C. Admin. Code § 8–107(7)).  A plaintiff can assert a retaliation claim under the NYCHRL by alleging that "the employer engaged in conduct that was reasonably likely to deter a person from engaging in" protected activity, including, objecting to sexually harassing behavior. *Id.*  Similar to Title VII and the NYSHRL, a plaintiff alleging a claim for retaliation under the NYCHRL must demonstrate "a causal connection between the protected activity and the adverse employment action." *Marquez v.*

22

*Starrett City Assocs.*, 406 F. Supp. 3d 197, 209-10 (E.D.N.Y. 2017) (citation omitted); *see also Muktadir v. Bevacco Inc.*, No. 12-CV-2184, 2013 WL 4095411, at *3 (E.D.N.Y. Aug. 13, 2013) (applying same standard for retaliation under Title VII, NYSHRL, and NYCHRL). As discussed, *supra*, Plaintiff plainly fails to allege a causal connection between her protected activity and the adverse employment action taken by Defendants. Accordingly, for the reasons previously discussed, Plaintiff's retaliation claim, brought pursuant to NYCHRL, is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2026

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

23